DISTRICT COURT OF NEW HAMPSHIRE - FEDERAL COURT

FILED - USDC -NH
2022 JUL 19 PM4:04

Natalie Anderson, Andre Bisasor;
Plaintiffs

v.

Patrick Donovan,
New Hampshire Supreme Court,
New Hampshire Rules Advisory Committee,
New Hampshire Professional Conduct Committee,
Lorrie Platt;
Defendants

Case #:

## COMPLAINT AND JURY DEMAND

## I. INTRODUCTION

1. NOW COMES plaintiff Andre Bisasor ("Plaintiff Bisasor") and plaintiff Natalie Anderson ("Plaintiff Anderson"), and respectfully petitions this Honorable Court for declaratory and injunctive relief, saying as follows:

2. The plaintiffs bring this complaint against the defendants captioned above.

3. This complaint alleges that the defendants have violated the plaintiffs' civil rights including violations of the ADA, violations of the first and fourteenth amendment and the equal protection clause and violations of the plaintiff's civil rights under section 1983, among other things, as outlined below

## II. JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § § 1331, and 1343. Plaintiff's claims relate to deprivation of his rights secured under the First and Fourteenth Amendments to the Constitution of the United States. Plaintiff's claim is authorized by 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1983.

## III. PARTIES

5. Plaintiff Andre Bisasor is an adult citizen of the United States and currently is located in Massachusetts.

6. Plaintiff Natalie Anderson is an adult citizen of the United States and currently is located in Massachusetts.

7. Defendant Honorable Patrick Donovan (Justice Donovan) is a Justice of the New Hampshire Supreme Court. He is sued in his individual and official capacity. He is also the chair of the New Hampshire advisory committee on rules and is responsible for promulgating rules which govern the attorney discipline office and the professional conduct committee, and regulates and controls the activities of the rules committee and rules of the court. He is sued in his individual and official capacity.

8. Defendant Lorrie Platt is the secretary of the New Hampshire Supreme Court advisory committee on rules. She is sued in her individual and official capacity.

9. New Hampshire Supreme Court Advisory Committee on Rules ("Rules Committee") is the body responsible for promulgating rules which govern the attorney discipline office and the professional conduct committee, and regulates and controls the activities of the rules committee and rules of the court.

10. The New Hampshire Attorney Discipline Office ("ADO") is the government body that enforces the rules of professional conduct for attorneys in New Hampshire. It is therefore a public body.

11. The New Hampshire Professional Conduct Committee ("PCC") is a government body that is part of the enforcement of the rules of professional conduct for attorneys in New Hampshire. It is therefore also a public body.

12. The justices of the New Hampshire Supreme Court are the principal defendants in this action.

13. The defendants in this case, including members of the advisory committee on rules, including its chair NH Supreme Court Justice Patrick Donovan and its secretary Lorrie Platt, and members of the Professional Conduct Committee are under the command and control of the New Hampshire Supreme Court.

14. The members of the NH advisory committee on rules, including its secretary Lorrie Platt, are under the command and control of its chair Justice Donovan and the New Hampshire Supreme Court.

15. The individual defendants exclusive of the justices of the New Hampshire Supreme Court are defendants inter alia in their capacity as agents under the command and control of the defendant justices of the supreme court.

16. NB: New Hampshire Supreme Court is also referred to as "NH Supreme Court" or "NHSC" herein.

## IV. VIOLATION OF TITLE II OF AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12131 et seq.)

17. Defendant NH Supreme Court, including its advisory committee on rules, is/are a public entity subject to Title II of the ADA, 42 U.S.C. § 12131(1).

18. The New Hampshire Supreme Court refused to provide reasonable accommodation to plaintiff Bisasor when he requested such accommodation. On information and belief, the NH Supreme Court has concocted a pretextual reason for failing or refusing to provide reasonable accommodation.

19. NH Supreme Court, its advisory committee on rules ("rules committee"), including its chair NH Supreme Court Justice Patrick Donovan and its secretary Lorrie Platt, has violated and continues to violate the ADA and, accordingly, has injured the plaintiffs by (a) administering and delivering its services in a manner that deprived or denied them of the opportunity to participate in the benefits of state services aa result of their medical disabilities, and (b) failing to reasonably modify its administration and delivery of these services in a manner that would avoid discrimination against the plaintiffs and of such individuals with said medical disabilities.

20. The Defendants' actions constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulations at 28 C.F.R. pt. 35.

21. Plaintiff Bisasor requested reasonable accommodation for medical disabilities (pursuant to the ADA) from the NH Supreme Court, its advisory committee on rules, including its chair NH Supreme Court Justice Patrick Donovan and its secretary Lorrie Platt.

22. The NH supreme court, its advisory committee on rules ("rules committee"), including its chair NH Supreme Court Justice Patrick Donovan and its secretary Lorrie Platt failed or refused to provide reasonable accommodations to Plaintiff Bisasor in violation of the ADA, which thus constitutes disability discrimination. Further details are as follows.

23. In or around June 2022, shortly after discovering that there was a public hearing on a proposed rule change of the NH supreme court rules that would affect him, Plaintiff Bisasor made a request (to the rules committee) for reasonable accommodations, while referencing his disability in conjunction with his request for accommodation. Plaintiff Bisasor does not live in NH but in another state and also has a medical disability that prevents him attending the hearing in person. Medical documentation was included in the communications to the rules committee. The accommodation requested was simply to attend remotely or by virtual means a public hearing held by the rules committee on proposed rule changes to the NH supreme court rules. [NB: The NH supreme court rule 51 promises that the rule change process will be open and transparent and subject to public input, discussion and hearing including and especially those most affected by the proposed rule change]. The rules committee was holding this hearing only in person. The request for accommodation (which included simply putting a telephone in the room where the hearing would be held) was made with ample time for the rules committee to accommodate a remote hearing. However, the committee only responded just before the hearing saying that it could not or would not accommodate the request. The rules committee also sidestepped addressing directly the fact that plaintiff Bisasor's request was made under the ADA. The rules committee failed to follow its policies and the law. The rules committee simply failed or refused to provide reasonable accommodation.

24. On information and belief, the rules committee did this without consulting the NH supreme court's disability ADA/Title II coordinator. On information and belief, the rules committee failed to confer with the designated ADA coordinator before deciding to refuse to allow the request for accommodation. On information and belief, the ADA coordinator was brought into the picture only after plaintiff Bisasor included her in email communications after the rules committee informed him that his request for accommodation was being refused. No questions were asked by the rules committee about Plaintiff Bisasor's request for accommodation. It was simply refused without further inquiry or process. In fact, plaintiff Bisasor was not even told that his request was denied under the ADA or that he needed to provide more information. Plaintiff Bisasor was left hanging or left in the dark in terms of a specific response to his request under the ADA or as to the status of his request under the ADA, until some time after the hearing had occurred and it was too late to be accommodated. Moreover, his request for accommodation was simply to allow him to call in

3

by phone. It does not take that much logistics to put a phone in the courtroom, especially because (on information and belief) the NH supreme court already has such equipment in place[1]. There appeared to be a concerted effort to block plaintiff Bisasor from participating in the hearing.

25. Plaintiff Bisasor has suffered harm and injury as a result and has been deprived of his rights by Patrick Donovan, Lorrie Platt, the rules committee and the NH supreme court.

26. In addition, regardless of plaintiff Bisasor's own disability, the failure to have accommodation available for all similarly-situated disabled persons who cannot participate in person, constitutes a violation of the ADA.

### V. VIOLATION OF CONSTITUTIONAL & FEDERAL RIGHTS

27. Furthermore, this ADA violation is compounded by an ulterior motive. The matter before the rules committee was a proposal for a rule change submitted by the ADO (one of the parties in the appeal (Case#: 2021-0604) currently being litigated before the NH supreme court). In fact, the ADO in its very rule change proposal cited material that referenced Plaintiff Bisasor (including false defamatory one-sided material fabricated by the defendant/respondent in an underlying ADO proceeding which should not have been included in the public record by the rules committee but was include anyway) and also cited the fact that the matter was undergoing litigation in the superior court without citing that the matter was currently before the NH supreme court.

28. NB: The fact false defamatory one-sided material fabricated by the defendant/respondent in an underlying ADO proceeding was included in the public record by the rules committee should have provided a clear reminder or prompt that Plaintiff Bisasor should have been contacted about this matter as required by Rule 51. But no such contact was made in violation of the committee's own rules. [NB: The rules committee is required to "identify, and solicit comment from, those who are likely to be most affected by, or interested in, a suggested rule or rule amendment". See NH supreme court Rule 51 in the following section: "(2) Responsibilities. The Advisory Committee on Rules shall have the following responsibilities: (A) To receive and assess all suggested rule and rule amendments referred by the Chair of the Committee; (B) To identify, and solicit comment from, those who are likely to be most affected by, or interested in, a suggested rule or rule amendment."]

29. On information and belief, this was intentional and designed to intentionally block, and disenfranchise Plaintiff Bisasor from participation because the rules committee, including its chair Patrick Donovan, wanted to silence him or prevent his voice from being heard in this proposed rule change matter.

---

[1] Moreover, in this day of Covid, the NH supreme court already has or has had virtual or phone access to court proceedings. It seems strange that not even a phone call could be allowed in this instance. NB: With the sudden spike of the Omicron variant, New Hampshire courts again expanded reliance on remote proceedings to avoid disruption of court operations during a public health crisis. At the onset of the pandemic, the New Hampshire Supreme Court issued a series of emergency orders authorizing video and telephonic hearings for certain proceedings during established periods of time. See generally https://www.courts.nh.gov/covid-19. Under federal law, the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Public L. No. 116-136, § 15002, 134 Stat. 281, 527-30 (2020) authorized federal courts to expand the use of video and telephone conferencing for certain proceedings as well.

30. NB: This is further compounded by the fact the Patrick Donovan is currently presiding or sitting on an appeal (Case#: 2021-0604) before the NH supreme court, involving the plaintiffs and the same parties who initiated the proposed rule change, and in which he has made several rulings mostly unfavorable to the plaintiffs and in which the plaintiffs have tried to get him recused but the plaintiffs were blocked from filing a motion to recuse, by Justice Donovan himself, while at or around the same time (unbeknownst to the plaintiffs) Justice Donovan was involved in blocking or cutting out the plaintiffs from participation in the proposed rules change process pertaining to the very issue that was before him in the appeal (Case#: 2021-0604). Justice Donovan cannot preside over both situations without a conflict. Even assuming arguendo thar he could do so in an unbiased manner, it is without question that Justice Donovan, in blocking, cutting out, or discriminating against the plaintiffs in the rules change process, cannot at the same time impartially preside over the appeal(Case#: 2021-0604) on the same issue. Yet Justice Donovan refuses to recuse himself.

31. Plaintiff Bisasor has also made a request for documents written by Justice Donovan in which also fast-tracked a pushing through of another proposed rule change by the ADO without public hearing by submitting it directly to NH supreme court bench. Justice Donovan has written a report explaining why he is seeking to fast track or to push through such a rule change without normal due process including a public hearing. This document is a public document. But yet Justice Donovan and the rules committee have failed or refused to provide this document to plaintiff Bisasor upon request. This is another violation of Plaintiff Bisasor's rights including but not limited to his constitutional right to public access under the NH constitution. It is also another way in which Patrick Donovan and the rules committee has blocked, prevented, deprived, denied access or participation to plaintiff Bisasor. It is also a violation of his first amendment right to criticize government and appears intended to shield himself from public criticism or scrutiny around why certain proposed rule changes are being pushed through with ful due process and public scrutiny.

32. This also violates the plaintiff's right to an impartial judiciary.

33. The fact that Justice Donovan has written/submitted this report document to the other Justices of NH Supreme Court is an indication that the members of the justices of the New Hampshire Supreme Court have an interest in the outcome of the current appeal before the NHSC (Case#: 2021-0604). Justice Donovan's refusal to turn over this public document further indicates that one or more of the justices act as principal for the purpose of retaining control over what information is communicated by committee member defendants to Plaintiff Bisasor and to the public.

34. The proceedings must stop until the issue of the intent or effect of the proposals for rule changes (and any attendant secret or undisclosed writings being used to justify their fast tracking and the circumvention of public process) and its effect on the outcome of current litigation before the NH Supreme Court has been addressed or resolved ethically and fairly and with due process and input made accessible and available to and from all affected parties. The plaintiffs ask the court to issue an injunction requiring the NH supreme court to follow its own rules regarding rule changes, allow the plaintiffs an opportunity to be heard

on the record, to provide a remedy to the harm caused to plaintiff Bisasor by refusing his request for reasonable accommodation and to enjoin the rules committee from continuing to violate the ADA by refusing to provide remote access to its public hearings as well as instituting an investigation into the role and extent of the rules committee chair (Patrick Donovan) in effecting or aiding/abetting discrimination against plaintiff Bisasor in order to assess whether Justice Donovan can continue as chair or whether the matter has been tainted because Justice Donovam has a vested or unpermitted or biased interest in the outcome of this proposal. The plaintiffs also request an injunction halting all proceedings in the appeal before the NH supreme court (Case#: 2021-0604), and to require the recusal of Justice Donovan, at least in the meantime.

35. Plaintiff Bisasor also sought response directly from the rules committee members but there has been no response from the committee members. Secretary Lorrie Platt ignored his emails on these issues for over 17 days or more, which is not acceptable and indicates a dismissive brush-off attitude or approach regarding plaintiff Bisasor's questions and concerns.

36. Moreover, the lack of timely response is very problematic for plaintiff Bisasor as a concerned member of the public and the refusal to address his pertinent and legitimate questions is further concerning, especially in the context of and on the heels of the evident failure of the committee to allow a reasonable accommodation for his attendance at the June 3, 2022 hearing.

37. Because time is of the essence, the plaintiff Bisasor has been and will be prejudiced in the matters raised herein.

38. The rules committee and its chair and its secretary's nonchalant, non-responsive or evasive approach has continued even after plaintiff Bisasor formally informed the rules committee and its chair that he believes he has been discriminated against by the rules committee or its members/representatives. Plaintiff Bisasor was unreasonably and unlawfully blocked from attending the June 3, 2022 rules committee hearing and his request for accommodation was unreasonably denied. Plaintiff Bisasor has also been treated dismissively by the rules committee and has not been treated with the respect, dignity and due regard as others have been treated by the rules committee. Plaintiff Bisasor was intentionally prevented from or cut out of receiving proper or timely notice about the proposal 2022-001 (pertaining to the current appeal before the NHSC-Case#: 2021-0604) and/or the June 3, 2022 hearing on that proposal by the ADO, even though his name was directly mentioned in the proposal documents submitted by the ADO to the rules committee, and even though NH Supreme Court Rule 51 explicitly requires that an active attempt be made to identify and inform those persons or members of the public that would be most affected by the proposal. This indicates an active attempt to push through rule changes that would affect current litigation before the NH supreme court and to influence the outcome thereof. Both proposal 2022-001 and proposal 2022-003 (another proposal submitted by the ADO) will likely affect or impact current litigation before the NH supreme court and these proposals were made by parties who are party to such litigation before the NH supreme court. It would be manifestly

6

unfair to allow such proposals to be granted and rules changes to be adopted without hearing from plaintiff bisasor, plaintiff anderson or other directly affected persons. This is especially the case where questions of law are at the center of such supreme court litigation which is the case in this instance, and where changing the rules could affect analysis of the legal questions. This smacks of game-rigging.

39. Plaintiff Bisasor has asked simple innocuous good faith questions of the rules committee and its chair about these and other relevant items but no response from the chair or the committee (this is after they were informed of Lorrie Platt's failure to answer these questions). The failure to respond to plaintiff Bisasor's questions further suggests that something is wrong with how the matter has been and is being handled. The failure to address questions about Patrick Donovan's involvement in the direction or facilitation of the violations noted above further imply Patrick Donovan's culpability in the doing or aiding/abetting of these violations against Plaintiff Bisasor. If Patrick Donovan was not involved, then either Lorrie Platt or Patrick Donovan would say so. But they have remained silent on such questions, further establishing that Patrick Donovan as chair of the committee is culpable for the violations noted above. Discovery is needed to fully establish the communications regarding these. On information and belief, Plaintiff Bisasor believes these communications will likely show an active attempt to block, deny, refuse, cut-out, disenfranchise and/or discriminate against Plaintiff Bisasor as well as an attempt to provide cover once plaintiff Bisasor started to make a complaint about these issues. It is evident that Lorrie Platt would not have undertaken her actions without informing the chair or the committee of them, or without their direct or implied consent.

40. Plaintiff Bisasor has a right to be heard and a right to be allowed participation as a member of the public and as an affected person as defined by NH Supreme Court Rule 51. Patrick Donovan, Lorrie Platt, the rules committee and the NH supreme court has trampled upon and violated those rights under New Hampshire Constitution and the US constitution as well as federal law including but not limited to the right to public access, the first amendment, the fourteenth amendment, equal protection clause, section 1983 and the ADA, among other things

41. By denying the request for reasonable accommodation, the defendants have placed plaintiff Bisasor in the cruel position of either giving up his right to participate/be heard AND facing the contracting of Covid-19 possibly leading to severe illness or death. As the plaintiff is an african-american, which group is disportionately affected by Covid-19 deaths, this denial also has racial bias implications.

## VI. VIOLATION OF THE ADA BY NH PROFESSIONAL CONDUCT COMMITTEE

42. The plaintiffs requested, in or around November 2020, a copy of public records for an attorney Craig Donais, from the PCC, citing distance and medical issues. The request was for an electronic copy of the public records. It was denied by the PCC. The PCC instead required that the plaintiffs drive over 200 miles from out of state to Concord NH during the heights of the pandemic in the fall of 2020 and to sit in the public office of the ADO for hours or days reading thousands of pages of public record, with no ability to copy, record or

photograph said documents. This was an unreasonable draconian unfair biased order that was tantamount to a death sentence being pronounced upon a medically disabled african-american who was under doctor's orders to avoid public places or else risk serious illness or death from Covid-19.

43. In addition, the PCC adopted and repeated false statements of the respondent's attorney Russell Hilliard (which have been proven false) without doing any proper fact finding or allowing rebuttal by the plaintiffs to correct the false defamatory statements at the time of its denial.

44. Moreover, the PCC had previously allowed copies to be provided to members of the public. This was the first time that the PCC blocked copies of public records from being given to members of the public. On information and belief, this was done as a favor to respondent Craig Donais and his lawyer Rusell Hilliard, who are well-connected members of the NH legal community and who after a year, it was discovered that the PCC chair David Rothstein had a conflict with one of both of them and was later recused after the fact, i.e. after these erroneous and unfair decisions had already long been made.

45. The matter was then brought to superior court as a public access/right to know action.

46. On or about October 1, 2021, just before a hearing in superior court, the Plaintiffs again requested from the PCC a copy of public records for an attorney Craig Donais, after being invited to do so by counsel for the PCC. The request was for an electronic copy of the public records. The Plaintiffs provided medical documentation supporting the need for accommodation on medical disability grounds.

47. The PCC promised it would rule on the request. It has been 10 months and still no ruling on the request

48. The PCC has failed or refused to rule on the request and to provide reasonable accommodation.

49. This is a violation of the ADA and constitutes disability discrimination.

50. Similarly, the NH supreme court has stated that the refusal of the ADO/PCC to provide or release public files to the public undermines the ability of the public to criticize the ADO/PCC thus shielding itself from public accountability. This infringes upon first amendment rights. See Petition of Troy Brooks (NH Supreme Court 1996). Hence, by refusing to give/release the files to the plaintiffs as a member of the public, the defendants are trampling upon plaintiffs' first amendment rights. By unreasonably preventing the release of the files, the defendants violated and are violating plaintiffs' constitutional rights and first amendment rights. NB: This issue was resolved in the Petition of Troy Brooks (1996) in the NH supreme court. Yet the PCC here refuses to follow this dictum.

51. Plaintiffs are members of the public. Plaintiffs have a right to access public records.

52. Plaintiffs have been blocked by the PCC from obtaining public records.

53. Plaintiffs therefore are seeking, by way of this action, the immediate release of these requested public files and injunctive relief to prevent plaintiff from being prejudiced by the above. This has been a harm to the plaintiff. By denying or delaying access to the files, the PCC has infringed upon the rights of the plaintiff and/or has unreasonably restricted access

to public records. Furthermore, not only is the PCC treating plaintiff in a manner it would not treat regular members of the public, the PCC is also treating the respondent and his attorney in a different more favorable manner than it would other parties. The respondent is being given special preferential treatment while plaintiffs are subject to unfavorable biased disparate treatment. The PCC is a government body and the records of its proceedings, in particular those which have been deemed public by operation of its rules, policies, and procedures, must be public and the public must be granted access to such records. The New Hampshire Supreme Court has specifically recognized that the New Hampshire Constitution creates a right of public access to court records.

54. Therefore, the plaintiff also has a constitutional right to access the public file at the ADO. Plaintiffs also have a first amendment right to access the public file. The PCC continues to delay decisions to finally resolve this matter, chilling their first amendment right to request and obtain these public records. The ADO and PCC have thus created an imbalanced, unfair, biased situation favoring the respondent. The plaintiffs, among other things, is from out of state and have been treated unfairly and prejudicially in this matter, relative to the respondent who is a favored New Hampshire citizen and who is represented by a well-known and well-connected lawyer. This is another manifestation of bias and prejudice where the respondent enjoys a home court advantage.

55. The New Hampshire Supreme Court's failure to accommodate those with disabilities violates the federal and state constitutional rights of citizens. It also discriminates against members of the public with disabilities who may be put at heightened risk of infection due to complications related to their own disabilities.

56. Without the provision of reasonable accommodations or modifications, those with disabilities are being effectively denied their ability to appear, making them unable to exercise their rights and denying them the opportunity to participate and be heard and exercise their first amendment rights.

## VII. FEDERAL LAW REQUIRES REASONABLE ACCOMMODATIONS OR MODIFICATIONS FOR PERSONS WITH DISABILITIES

57. Enacted in 1990, among the ADA's purposes was to address "discrimination against individuals with disabilities … in such critical areas as … voting, and access to public services." 42 U.S.C. § 12101(a)(3).

58. This includes the "failure to make modifications to existing facilities and practices, … [or] relegation to lesser services." 42 U.S.C. § 12101(a)(5). Congress's intent was to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities, … [and] to ensure that the Federal Government plays a central role in enforcing the standards established" in the ADA. 42 U.S.C. § 12101(b).

59. "Failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion," and therefore "Congress required the States to take reasonable measures to remove … barriers to accessibility." Tennessee v. Lane, 541 U.S. 509, 511 (2004).

60. "Disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Disability is "construed in favor of broad

coverage," 42 U.S.C. § 12102(4)(A), and includes not only physical impairments, but also diseases that compromise a person's immune system. See Bragdon v. Abbott, 524 U.S. 624 (1998).

61. New Hampshire citizens or persons who have been denied remote participation in public hearings before or in the NH supreme court, in their efforts to avoid COVID-19 infection, are disabled for purposes of the ADA.

62. The ADA covers any "public entity," including "any State or local government" and "any department, agency, special purpose district, or 16 other instrumentality of a State … or local government." 42 U.S.C. § 12131.

63. "Public entity" is construed broadly, Pennsylvania Dep't of Correction. v. Yeskey, 524 U.S. 206, 212 (1998), and includes, for instance, access to state courthouses and participation in state court proceedings. Tennessee v. Lane, 541 U.S. at 509; Badillo-Santiago v. Naveira-Merly, 378 F.3d 1 (1st Cir. 2004)

64. Thus, the New Hampshire Supreme Court and its committees is a covered public entity which must comply with the ADA. The ADA requires that persons with disabilities be provided "reasonable accommodation" of their disability. See Mary Jo C. v. New York State & Local Retirement System, 707 F.3d 144, 153 (2d Cir. 2013) (ADA mandates that "covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity … to participate in programs."); see also 29 U.S.C. § 794 ("No … individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in … any program or activity [which] means all of the operations of … a department, agency, special purpose district, or other instrumentality of a State or of a local government.").

65. "A modification is reasonable if it is reasonable on its face or used ordinarily … and will not cause undue hardship." National Federation of the Blind v. Lamone, 813 F.3d 494, 507 (4th Cir. 2016).

66. While states may have once been reticent of telecommuting technology as an accommodation, see e.g., Kvorjak v. Maine, 259 F.3d 48 (1st Cir. 2001), that has been largely abrogated by the pandemic, and such technology was in fact implemented during the pandemic by the New Hampshire Supreme Court.

67. For over three decades, people with disabilities have been guaranteed the right to equal participation in all aspects of community living, including the democratic and public access principles of taking part in state government. Yet, those with disabilities including plaintiff bisasor have been discriminated against by the NH Supreme Court's refusal to comply with well-established federal law and related rights to receive reasonable accommodations. Participation in any democratic or public process is constitutionally guaranteed to all citizens.

68. While the COVID-19 pandemic may be subsiding in some ways, there is the possibility that the pandemic will surge again, that vaccines do not protect some immuno-compromising disabilities, that new variants will reduce the efficacy of vaccines, or that other infectious diseases arise. These could have disastrous effects on the health of those citizens who have pre-existing conditions which are triggered or exacerbated by continuing or future public

health dangers. This issue thus has not gone away, and it is imperative that remote access be allowed as a reasonable accommodation going forward.

69. Failure to provide reasonable accommodations violates disabled citizen's' rights. It also perpetuates the bias Congress sought to eradicate in enacting the ADA. When signing the ADA into law in July 1990, President George H.W. Bush stated: [ [N]ow I sign legislation which takes a sledgehammer to another wall, one which has for too many generations separated Americans with disabilities from the freedom they could glimpse, but not grasp. Once again, we rejoice as this barrier falls for claiming together we will not accept, we will not excuse, we will not tolerate discrimination in America. Remarks of President George H.W. Bush at the Signing of the Americans with Disabilities Act (July 26, 1990).] This court should recognize the violation of rights caused by the lack of reasonable accommodations, and grant injunctive relief requested herein.

70. Furthermore, "State government" — and all its components — is the express target of Title II of the ADA. 42 U.S.C. § 12131(1)(A). A state supreme court is clearly within that definition. Pulliam v. Allen, 466 U.S. 522, 541 (1984) ("[A] State acts only by its legislative, executive, or judicial authorities[.]"); 28 C.F.R. § Pt. 35, App. B § 135.102 ("Title II coverage . . . includes activities of the legislative and judicial branches of State and local governments.").

71. That understanding comports with the statute's declared purpose: "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" by "invok[ing] the sweep of congressional authority." 42 U.S.C. § 12101(b). The Act's objectives were informed by Congress' findings that disabled persons have a "right to fully participate in all aspects of society" and that "individuals who have experienced discrimination on the basis of disability often had no legal recourse." Id. at (a).

72. Moreover, one of the explicit purposes of the ADA is to create "strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(3).

73. To that end, Congress explicitly abrogated the Eleventh Amendment immunity of the states. 42 U.S.C. § 12202 ("In any action against a State for a violation of the requirements of this Act, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State." Id.

74. Moreover, the defendants waived any immunity by accepting federal funds under the Rehabilitation Act. Both statutes provide the same relevant relief here: reasonable accommodations. The statute provides that "[n]o otherwise qualified individual with a disability . . . shall . . . be excluded from participation in . . . any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). The "term" "program or activity' means all of the operations" of any "State or local government." Id. at (b). Like the ADA, the Rehabilitation Act states that "[i]n a suit against a State for a violation of [the] statute" remedies are available "to the same extent" such remedies are available in a suit against all other defendants. 42 U.S.C. § 2000d-7(a)(2). Similarly to the ADA, the Rehabilitation Act also includes an explicit waiver of Eleventh Amendment immunity.

## VII. THE DEFENDANTS HAVE VIOLATED THE PLAINTIFF'S FEDERALLY PROTECTED FIRST AND FOURTEENTH AMENDMENT RIGHTS UNDER THE US CONSTITUTION

75. The PCC's rulings and policies effectively prevent the plaintiffs from speaking to witnesses in a prior matter in order to marshal evidence in support of her claims, from discussing charges with prior New Hampshire professional conduct committee witnesses who are the victims of alleged misconduct, and from discovering evidence presented to the NH professional conduct committee investigations, if any, nor to utilize information obtained by plaintiffs during the course of their interaction with the committee for use as evidence in a court in pending or future litigation.

76. Furthermore, the plaintiffs are prevented from learning the basis of New Hampshire professional conduct committee conclusions, as the charges filed by the plaintiffs were found to not be sufficient to trigger disclosure under the Rules of the New Hampshire Supreme Court.

77. It is either an unconstitutional rule or unconstitutional interpretation of the rule to prohibit the plaintiffs from obtaining a copy of the files. This violates the NH constitution and the US constitution. It is a violation of plaintiffs' fourteenth amendment rights and first amendment rights.

78. The public interest in disclosure of records is particularly great when it may potentially expose government misconduct or negligence. See, e.g., Union Leader Corp. v. N.H. Ret. Sys., 162 N.H. 673, 684 (2011) (noting that a public interest existed in disclosure where the "Union Leader seeks to use the information to uncover potential governmental error or corruption"); Prof'l Firefighters of N.H., 159 N.H. at 709 ("Public scrutiny can expose corruption, incompetence, inefficiency, prejudice and favoritism.").

79. In this case, the NHSC has previously recognized that the public disclosure of ADO records implicates transparency in ensuring that the ADO is not conducting its regulation of the attorney system in a corrupt way. By preventing a copy of the requested file being given to the plaintiffs, the PCC is shielding itself and the ADO (and ultimately the NHSC) from public accountability which violates the spirit and the intent as well as the letter of the NH constitution. See Prof'l Firefighters of N.H., 159 N.H. at 709 ("Public scrutiny can expose corruption, incompetence, inefficiency, prejudice and favoritism."); see also N.H. Const. pt. I, art. 8 ("Government . . . should be . . . accountable. . .").

80. By subjecting the plaintiffs to unnecessary exposure to Covid-19 and possibly death, the defendants have denied the plaintiffs the right to petition government, as secured by the First and Fourteenth Amendments of the United States Constitution as further secured by 42 U.S.C. § 1983.

81. By restricting plaintiffs' right to free speech, the plaintiffs are inhibited and chilled in the exercise of their right of free speech to reproach government officials, and to petition the government, and thus defendants have violated the plaintiffs' rights secured by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## VIII. THE DEFENDANTS ARE NOT ADHERING TO THEIR OWN RULES.

82. The defendants are violating their own rules and not adhering to their own rules.

83. They are behaving like a law unto themselves where they can do whatever they want or please without accountability to the public.

84. The defendants are not allowing reasonable access to public files in violation of the NH constitution.

85. Moreover, it should be noted that there is a common law precedent where public access is mandated for court records and records related to court bodies.

86. By not following their own rules, the defendants are infringing upon the constitutional and substantive rights of the plaintiff.

87. NB: Moreover, the acts and decisions of the defendants have not been rational. A public body must be rational in its decisions. Unreasonableness can include anything which can objectively be adjudged to be unreasonable. It is not confined to culpability or callous indifference. It can include, where carried to excess, sentimentality, romanticism, bigotry, wild prejudice, caprice, fatuousness, or excessive lack of common sense. It is a decision which no sensible authority acting with due appreciation of its responsibilities would have decided to adopt. (Secretary of State for Education and Science v Tameside Metropolitan Borough Council [1977] AC 1014, per Lord Diplock at 1064 E-F).

## IX. FURTHER CONSTITUTIONAL ARGUMENTS

88. Defendant Rules Committee and Defendant PCC are public bodies or agencies created by the New Hampshire Supreme Court.

89. They are headquartered in Concord, New Hampshire, and conduct business and operations throughout the State of New Hampshire. These defendants are currently enforcing the unconstitutional practices and policies complained of in this action.

### A. The First Amendment

90. These defendants act under color of state law.

91. Under color of state law, these defendants have intruded upon the plaintiff's first amendment rights and the plaintiff's First Amendment rights are irretrievably infringed.

92. Accordingly, Defendants currently maintain and actively enforce a set of laws, customs, practices, and policies that deprive the plaintiffs of rights, privileges and/or immunities secured by the First Amendment.

93. Plaintiffs have no adequate legal remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

94. Plaintiffs are therefore entitled to relief.

### B. Improper Policies and Procedures

95. It is clear from the above, that the defendants have allowed improper policies and procedures that implicate the plaintiffs' First and Fourteenth Amendment rights.

96. For example, the First Amendment requires policies and procedures for protecting the fundamental right to freedom of speech.

97. But the defendants have adopted policies and procedures that explicitly bar members of the public from obtaining copies of grievances and thus from publicly criticizing the defendants in their work or decisions.

98. Accordingly, the defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law that deprive the plaintiffs of rights, privileges and/or immunities secured by the First and Fourteenth Amendments.

99. Plaintiffs have no adequate legal remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

100.   Plaintiffs are therefore entitled to relief.

### C. Violation of Procedural Due Process

101.   The Defendants have violated plaintiffs' procedural due process rights thus implicating the Fourteenth Amendment.

102.   The Fourteenth Amendment requires the defendants to provide constitutionally adequate procedures in order to protect plaintiffs' rights to procedural due process. Even in the absence of First Amendment interests, minimum procedural safeguards are required under the due process clause.

103.   In the absence of constitutionally adequate procedures, the defendants have violated plaintiffs' Fourteenth Amendment due process rights, where fair procedures are required, apart from any procedural safeguards required by the First Amendment.

104.   Therefore, the plaintiffs have been deprived of their right to procedural due process under the Fourteenth Amendment.

105.   Accordingly, the defendants currently maintain and actively enforce a set of laws, customs, practices, and policies under color of state law that deprive Plaintiff of rights, privileges and/or immunities secured by the Fourteenth Amendment, and, therefore, Defendants are liable to the plaintiffs under 42 U.S.C. § 1983.

106.   The plaintiffs have no adequate legal remedy by which to prevent or minimize the continuing irreparable harm to their constitutional rights.

107.   The plaintiffs are therefore entitled to relief.

### X. BIAS AND CONFLICT OF THE NH SUPREME COURT

108.   NH Supreme Court is biased against the plaintiffs and is not able to adjudicate the cases before it involving the plaintiffs.

109.   NH Supreme Court is unnecessarily hostile towards the plaintiffs.

110.   One piece of evidence of this bias comes from the fact that the NH Supreme Court has discriminated against Plaintiff Bisasor in violation of Title II. Other evidence has been referenced throughout this complaint and will be further furnished, by way of other exhibits, documents and emails, at hearing or in due course.

111.   Furthermore, the NH Supreme Court is biased because it is doing the same thing that is at issue in the underlying litigation. The ADO and PCC are part of the supreme court and are thus essentially the supreme court. The NH supreme court cannot preside over its own self as both a party and a judge. This is a fundamental self-contraction and firmly establishes a conflict of interest. This fact is further shown by the fact that the AG office currently

represents the ADO and PCC. But the AG office will now represent the NH supreme court before this court. They will have the same lawyers before this court. But the lawyers that represent the supreme court are arguing before the supreme court in a case where the supreme court is a party being represented by the same lawyers that represent the supreme court. When taken to its logical conclusion, the thorny nature of this conundrum becomes self-evident, in that there is no way around the fact that the NH supreme court is conflicted and cannot be impartial in this matter. No man can be his own judge.

112.    Also, the NH Supreme Court and its committees have shown and continue to show favoritism towards Russell Hilliard. Furthermore, Hilliard is allowed to attack, lie and twist facts, disparage, condescend to the plaintiffs. Justices sit and watch and eat it all up without any objection or warning, and thus the justices indulge the stereotyping offered by Hilliard and thus engage in stereotyping themselves.

113.    Additionally, Russell Hilliard has a conflict of interest in his role as an advisor to the NH advisory committee on rules. He is allowed to participate and give input on NH Supreme Court and its committees even where he is not a member of said committees. This is a very strange occurrence and speaks to the tremendous power and clout that Russell Hilliard or his firm wheels both within the NH supreme court and its committees and without.

114.    Said conflict of interest should be imputed to the advisory committee and the professional conduct committee as both himself and members of his firm have been extensively involved in both the internal rule making machinery of the New Hampshire Supreme Court and advising the defendants.

115.    Further, said conflict of interest should be imputed to the justices of the New Hampshire Supreme court for purposes establishing an independent federal forum.

## XI. FURTHER BACKGROUND & FACTS ESTABLISHING THE BIAS, CONFLICT AND HOSTILITY OF THE NH SUPREME COURT

116.    In or 2015, the plaintiffs entered into a residential rental agreement with an extended stay hotel property in Nashua. A dispute arose regarding how the plaintiffs were treated during their residency, especially as compared to other similarly situated guests. The situation deteriorated until complaints were made to the corporate office/headquarters of the hotel. The matter further escalated until the plaintiffs filed a 540A action in circuit court in Nashua in January 2017 enjoining the hotel defendants from a breach of covenant of quiet enjoyment and violations of 540A. A TRO was entered against the hotel defendants and a hearing was scheduled. The plaintiffs were represented by the NH legal assistance as the NH legal assistance believed that the rights of the plaintiffs needed to be vindicated not only for the plaintiffs but for citizens across NH.

117.    In or around February 2017, the circuit court judge entered a decision against the plaintiffs without awaiting the plaintiffs brief which was not yet due. After plaintiff's counsel raised concerns, the circuit court judge vacated the order, allowing the plaintiff's counsel to file a brief. However, the circuit court judge simply regurgitated what he first wrote and furthermore went on to add erroneous facts to support his decision. The judge was clearly biased and making up facts that did not occur. He also applied a lenient standard not

requiring the defendants to sign facts under oath/affidavit in violation of the rules and the court's own order at the beginning of the case. The plaintiffs filed a motion to recuse the judge for bias but was denied in bad faith. After the plaintiff filed other post judgment motions and they were denied without good or adequate reason, the plaintiffs filed an appeal to the NH supreme court regarding the circuit court action.

118.    The circuit court judge also went back and retroactively altered documents in the case record that was on appeal to cover his erroneous and biased decisions. This was further evidence that this judge was biased and had corrupted justice in this case.

119.    Shortly thereafter, the circuit court judge was discovered by his own court staff to be secretly falsifying his performance evaluations, creating fake evaluations. It was then discovered later that Judge Moore further went as far as to solicit favors from certain defendants and their lawyers in cases before him (including the hotel defendants and their lawyers in our case) in order to boost his performance evaluations in aid of a bid for a seat on the NH supreme court. This meant that this judge was engaged in a kind of pay to play scheme where he would decide cases in favor of such defendants in exchange for favorable performance evaluations from said defendants and their lawyers. An investigation ensued and it was further discovered that the circuit court judge had tampered with his evaluations and falsified them in order to boost his performance evaluations. After further investigation, it was discovered the circuit court judge lied to investigators stating that it was mental illness that caused his lapse in judgment (and wherein he used state funds for treatment at the time) when in fact it was his own objective of securing a seat on the NH supreme court. The judge was first suspended, then he resigned, then he was brought up on felony charges, and then he was disbarred. Pursuant to the above investigations and attendant media coverage, this judge was thus exposed to be one of the most corrupt and dishonest judges in the state.

120.    However, in the appeal, when the plaintiffs raised these concerns, the court appeared to be offended that the plaintiff was calling out their own judge in such a straightforward way and they retaliated by blocking the filing of these facts and the record regarding this judge. It was as though only they can say bad things about him but some outsider black couple should not criticize the judge even though he was corrupt. This was the first encounter the plaintiff had with the bias and taintedness of the NH supreme court.

121.    Thereafter, the NH supreme court, ruled in favor of the defendants using Judge Moore's decision, and refusing to even take up the issue of bias and recusal of Judge Moore, further cementing the sense of animus that the court had towards the plaintiff in her raising bias and recusal issues concerning Judge Moore. Moreover, the court completely ignored , went out of its way to make illogical statements in its ruling.

122.    It was later discovered that Judge Hanz Marconi (the only female Justice on the NHSC) was recused from the case but this was never told to the plaintiffs during the case. Judge Marconi evidently had been involved in the deliberations of the case or other decisions of the case prior to her recusal at or near the end of the appeal. If Judge Marconi was biased or conflicted, then her involvement in the appeal for the majority of time rendered that process tainted. When the plaintiffs raised these issues, the court ignored, brushed off or side-tepped

the issues and even to this day, neither Justice Marconi nor the NH supreme court has stated the reason for her recusal which is required by its own rules governing judicial disqualification. This is an example of how the NH supreme court arbitrarily and capriciously fails to adhere to its own rules, in order to rig outcomes in a disparate manner depending on who is before it, who is making the argument, who the defendant and their lawyer is and who the plaintiff is. The plaintiff was disappointed because prior to this, she had no reason to be skeptical or cynical about the NH supreme court.

123.    It should be noted that, in or around the same time that the plaintiffs began litigations against the hotel defendants in the Nashua NH circuit court in early 2017, the plaintiffs also filed a superior court action against the said hotel defendants centering on breach of contract, discrimination/retaliation and consumer protection claims, as the circuit court was a court of limited jurisdiction and did not hear those kind of claim. However, after some intense litigation, the defendants approached the plaintiffs for an early mediation, which after some back and forth and after the defendants replaced their lawyers, a settlement MOU was arrived at, in or around late 2018 but became unraveled after the NH supreme court ruled in favor of the defendants in early Spring of 2019.[2]

124.    It should also be noted here that a well-connected local NH attorney, named Craig Donais, represented the hotel defendants in the circuit court case but was later disqualified due to having previously entered into a prospective attorney-client relationship with the plaintiffs on this same case/issue. After he was disqualified, he continued to be involved in the NH circuit court case and the NH superior court case, even going as far to provide a false affidavit to those courts falsely stating that plaintiff Bisasor had accused him of discrimination because he declined to ultimates take the case, which was utterly and totally false (and ridiculous). He did this evidently as part of a sophisticated strategy to paint the plaintiffs in a negative light racially, in order to obtain an advantage in the superior court case for the hotel defendants concerning their legitimate discrimination/retaliation claim against the hotel defendants.  This act both constituted perjury and defamation by Donais and is currently being addressed in the superior court hillsborough north. As an officer of the court, and an agent licensed by the state of NH, Donais thus violated the plaintiff's civil rights both federally and under state law.

125.    In 2019, the plaintiffs filed an attorney discipline complaint against Craig Donais. In 2020, the plaintiff filed a second attorney discipline complaint against Craig Donais because of additional bad acts that he committed after the filing of the first complaint. However, from very early on, it became evident that Donais was well-known and connected at the ADO and PCC. He was represented by an even more well-connected NH lawyer named Russell Hilliard. Hilliard has well established relationships with the general counsel and

---

[2] [NB: After a further circuitous path including after refiling the case with additional defendants and claims in superior court hillsborough-north, the defendants agreed to restart settlement negotiations and this was finally consummated and completed in early 2022 and the parties agreed to file a stipulation of dismissal pursuant to settlement thus ending the longstanding legal battle among these parties, except for Craig Donais who pulled out of the settlement at the last minute and decided to litigate/defend the case instead.]

deputy general counsel at the ADO and also, on information and belief, with the PCC and/or its then chair David Rothstein.

126.   At least three appeals to the NH supreme court resulted from the two attorney discipline complaints filed by plaintiffs, two were initiated by the plaintiffs and one initiated by Donai

127.   In almost every instance, the NH supreme court sided with the ADO and Donais almost every step of the way.

128.   In fact Mark Cornel, deputy general counsel of the ADO, an office of the NH Supreme Court, told the plaintiffs that the ADO/PCC are allowed to discriminate against the plaintiffs because the plaintiff has no rights in their system.

129.   Later, after the matter went to the superior court, the Chair of the PCC (David Rothstein) recused himself after refusing to recuse himself from several months to a year or so earlier. This means the entire proceedings before the PCC was potentially or actually tainted.

130.   In 2020, the plaintiff filed a RSA 91A action. This action is currently on appeal before the NH supreme court (as case #).

131.   During that action, Judge Andrew Schulman was recused based on his disclosure that he knew and had worked with Donais.

132.   In a subsequent superior court case in Hillsborough North, Judge David Anderson recused himself because of a conflict created by the appearance of Russell Hilliard.

133.   Between Hilliard and Donais, several superior court and supreme court judges had to recuse themselves. The situation is untenable. The plaintiffs cannot get a fair trial in state court but especially the state supreme court.

134.   The NH supreme court has 2 justices recused. One refuses to recuse. They are down to 3 out of 5 justices. These are the same 3 male justices that have been condescending, chiding, harsh and heavy-handed almost at every turn with the plaintiffs. With these three justices, the plaintiffs appear to be persona non grata.

135.   The plaintiffs have been deprived due process, deprived of a fair proceeding, deprived of impartial judiciary and deprived of equal protection and subjected to arbitrary and capricious conduct. The hostility of the NH supreme court has been evident and palpable and it is evident that these same justices do not like the plaintiffs, particularly Justice Donovan, who refuses to recuse himself and continues to show bias against the plaintiffs.

136.   This situation cries out for relief. This is an example of why there is a federal court, i.e. to protect outsiders from entrenched bias and local unfairness from state entities or state courts.

137.   In 2022, the NH supreme court blocked the plaintiffs from obtaining a waiver of costs for transcript.

138.   The NH supreme court refused to allow plaintiffs request to file a motion to recuse.

139.   The NH supreme court refused to allow plaintiffs an extension of time file brief based on major surgery and based on the need to obtain a correct/propet transcript.

140.   The situation is out of control. At this point, the situation appears to be so hostile, that it does not even make sense for the plaintiffs to ask the NH Supreme Court for anything. They

will never rule in favor of the plaintiffs. They will find a way to rule against the plaintiffs even when it does not make sense or when it involves routine ministerial issues. The plaintiffs will never get a fair trial with these 3 remaining justices of the NH Supreme Court. To add insult to injury, the very judge (Justice Donovan) of whom the plaintiffs has raised concerns about his impartiality, his relationship with Donais and state AG lawyers, was appointed to be the main justice to rule on almost every or any motion from the plaintiffs and almost without fail, he denies almost every motion or request by the plaintiffs.

141.    The situation is so bad that even Donais and Hilliard evidently have seen this weakness to exploit, where appeals that they would never bring to the NH supreme court, they bring them when it concern the plaintiffs because they know that the NH supreme court is hostile to the plaintiffs and may grant their frivolous appeals simply out of their bias against the plaintiffs or as a favor to Donias/Hilliard. NB: Just recently Donais filed a frivolous appeal to the NH supreme court because a superior court judge (in the hillsborough-north case) denied his premature motion to dismiss for failure to timely serve complaint, for which there is no authority or precedent and for which he has no standing to file such an appeal but yet has done so for the very reasons cited above.

142.    The NH Supreme Court is not able to adjudicate the cases before it involving the plaintiffs, and/or Donais/Hilliard.

143.    The NH Supreme Courtis unnecessarily hostile towards the plaintiffs.

144.    Moreover, unfortunately, it appears also that the NH Supreme Court is uninterested in the fairness of the proceedings which Ms. Anderson is involved in or has brought to its attention. This concern is partially buttressed by the track record of the NH Supreme Court's dealings with Ms. Anderson.

145.    This court has never granted any relief of substance to the plaintiffs. At almost every turn, this court has ruled against the plaintiffs. In most instances, the NH Supreme Court has not provided any reason at all for its decisions. And on the rare occasion when it does provide a reason for its decision, it is a simple one without much explanation or substance.

146.    The NH Supreme Court has treated the plaintiffs as though they were "persona non grata". The plaintiffs believe they are not welcomed by the NH Supreme Court (at least by the 3 remaining unrecused justices including Justice Donovan) and  the plaintiffs do not feel they have been treated impartially by the NH Supreme Court. In most instances, the NH Supreme Court has ruled against the plaintiffs even on simple procedural issues when it would not have hurt anyone to grant the relief requested.

147.    To the extent that on one or two occasions, the NH Supreme Court granted the plaintiffs' request on procedural requests, it was only when it was largely unopposed. Once the opposing party (such as Craig Donais) opposes, or attacks the plaintiffs, or cast aspersions on the plaintiffs (as a scorched earth/ad hominem tactic to try to disparage or undermine the plaintiffs), the NH Supreme Court takes their side, virtually without fail. Every benefit of the doubt appears to be given to the opposing party when it comes to us, even when it is a simple one-week extension of time request but opposed. The plaintiffs' word appears to be given no or little weight. All inference appears largely to be made against

the plaintiffs and in favor of the opposing parties or other parties. Even when the opposing party has made clear false statements to the NH Supreme Court (or engaged in egregious behavior unbecoming of a lawyer) and it was pointed out to this court, this court ignores it or avoids it but yet if we make a minor procedural mistake (such as going over word counts or filing something just pass the deadline in the early morning of the next morning in the AM hours, etc.), this court does not hesitate to chide the plaintiffs or hold it against the plaintiffs in some way.

148.    And, going back even to the first case with the hotel defendants, the NH Supreme Court's explanation was illogical, ignored facts, ignored the legislative intent, and gave weight to facts found by a biased judge from the lower court (Judge Paul Moore) who was found to be one of the most corrupt and dishonest judges in NH, and who was disbarred and brought up on felony charges for his outrageous misconduct and dishonesty. When Ms. Anderson brought these things to the attention of the NH Supreme Court, the NH Supreme Court reacted negatively and/or ignored it altogether, almost as if the NH Supreme Court was offended that some outsider pro se person had the gall to criticize a NH judge. But yet this judge (Paul Moore) was found to be thoroughly corrupt and he was the judge on Ms. Anderson's case in the state circuit court and he was found to be soliciting evaluations from landlords (which included the defendant hotel in Ms. Anderson's case), for who Ms. Anderson had moved to recuse but was denied, and after it was brought on appeal to the NH Supreme Court, the NH Supreme Court ignored the recusal issue altogether even though it was well established beyond a shadow of a doubt that Judge Moore was corrupt, dishonest, compromised and had engaged in biased decisions in order to help his bid for a seat on the NH supreme court.

149.    Hence, unfortunately, the plaintiffs believe that the NH Supreme Court will never rule in their favor, at anything of real substance. The plaintiffs now fear bringing any case to this state supreme court because the plaintiffs believe that the 3 justices remaining1 on the NH Supreme Court, have made up their minds, apriori to be against the plaintiffs, no matter what the issue.

150.    NB: The context for this should be kept in mind. The current NH Supreme Court is a hobbled court as it relates to Ms. Anderson. For reasons unknown to the plaintiffs, Justice Marconi appears to be excluded from the current appeal (and any appeal involving the plaintiffs). This is very mysterious as the reason has not been disclosed even though the plaintiffs have requested disclosure of the reason, on more than one occasion.  The chief justice is also recused presumably because of a conflict with the defendant lawyers. This leaves 3 judges on the bench for this or any case involving the plaintiffs. This is a highly peculiar situation that the plaintiffs are in. It seems guaranteed that any case the plaintiffs appeal to the NH supreme court would result in the same hobbling of the NH supreme court with the same three justices.

151.    The plaintiffs have thus determined that they are in a hostile environment with the NH Supreme Court and its committees.

152.    This is not unheard of. People who challenge legal establishments often are treated in a hostile manner. Rarely are they received as pioneers or change agents, but instead as troublemakers, interlopers, agitators, or as "the enemy". This is how many entrenched systems work.

153.    The plaintiffs understand that it is likely that the NH Supreme court will disagree with the above concerns because rarely are people (especially those in power) willing to be self-critical enough to see blind spots or see themselves objectively. This is particularly true of judges, especially supreme court judges who in many instances believe they can do wrong, make no error, or be biased.

154.    With 3 judges left, the plaintiffs are at a major disadvantage. The fact that there is a potential for bias with Justice Donovan increases the risk of unfairness and partiality when it comes to the plaintiffs. The plaintiffs cannot afford any further disadvantages as black pro se litigants from outside of the state of New Hampshire.

155.    However, the concern that the NH Supreme Court is hostile and biased can be understood in the context of the larger trend of the politicization of the courts, most notably even the US supreme court. The refusal to even hear from Merrick Garland and the subsequent appointments of Brett Kavanaugh, and Amy Coney Barrett have revealed a clear understanding by the American people that judges are biased and that the name of the game is get one's biased partisan team player in power at all costs because only then it is assured that one's "team" will get the outcomes they want in significant court rulings for the country. Fewer and fewer people today trust that judges will rule based solely on the law and the facts. Never has the institution of the judiciary been so damaged and viewed with a jaded cynicism and skepticism.

156.    This is further reinforced by numerous examples of local judges accepting bribes, engaging in dishonest conduct and in biased rulings across the country i.e., the judge who was paid to send black youth to prison in Pennsylvania and the judge who let the rapist of a high school girl off with probation because he would not fare well in prison and was a good kid with a good future ahead of him.

157.    In the local context, there are examples of the corruption of Judge John Fairbanks, Judge David Brock, and even lately Judge Paul Moore, and recently Judge Julie Introcaso. Even regarding Attorney Brian Snow, who was one of the opposing attorneys on the plaintiffs' prior Hotel case, the plaintiffs found out that he had been removed from the bench as a judge, previously, for serious ethical misconduct. Sadly, the plaintiffs' experience with people in the courts of NH have not been good examples of integrity, honesty, and ethical conduct. NB: Caroline Douglas, who was the wife of a NH supreme court justice, has written about the corruption of the NH judiciary. The issues with the New Hampshire legal system are well-known and well-documented and so it is not as though the plaintiffs are making up the existence of these issues.

158.    Also, even Julian Jefferson, who works for the NH public defender office, and the only black member of the NH Supreme Court's Complaint Screening Committee, recently testified at a police accountability hearing with the NH Governor, citing several personal and

other examples of rampant racism in NH courts, and in the NH legal and law enforcement systems.

159.    Then comes Attorney Craig Donais who is a well-connected lawyer in NH. He has been a republican candidate for senator (in 2014). He has sat or continues to sit on the Mayor's ethics conduct board. He sits on the Manchester police crime-line board. He has been an assistant attorney general for the NH DOJ. He has worked at well-known law firms in NH including the current one at Wadleigh Starr Peters (which he started working for just after he had been solo practitioner for some time and after Ms. Anderson's case at the ADO had begun). Evidently, he knows or is known by a lot of people in the NH legal community.

160.    The plaintiffs have called several attorneys to seek legal representation in these matters but several of them have been conflicted out before going further because they know or worked with Donais. The plaintiffs essentially thus far cannot obtain legal representation in NH as a result of these and other factors. Beyond that, even most recently, Judge Andrew Shulman, in the initial superior court Right to Know action, recused himself because he knew or worked with Donais. Then Justice Donovan of the NH Supreme Court was discovered to have worked at the same place with Donais and knew Mr Donais from interactions during private practice. It seems at almost every turn, Donais has had contact, relationships, or influence with those who would be now in a position to make decisions about Donais. Donais is thus firmly part of the NH legal establishment and it is well-established that the NH legal establishment is a tight-knit close and "clubby" community who evidently do not receive outsiders well, especially who might take on or challenge the system. Moreover, the fact that these issues either involve or relate to or are undergirded by "race" (which was initially raised, introduced, invoked, and manufactured by Donais first as an attack on the plaintiffs and for which he evidently was hoping to rely on any latent, hidden, subtle or implicit racial bias in others, to prevail) does not help matters either. This is a nuanced point that will be further explained in this federal court action except to say for now that race, racial issues, and systemic race issues have been and are unfortunately part of the subtext/backdrop if not the direct issue in these matters. The impact on plaintiffs' civil rights has been palpable and race has played a part in this whole situation.

161.    NB: Moreover, Craig Donais is represented by Russell Hilliard, another well-connected and well-known lawyer in NH. He has been on numerous legal committees in NH. He is a seasoned attorney before the ADO, the PCC, and the New Hampshire Supreme Court, and has personal relationships with people at the ADO and other such committees. Both Russell Hilliard and Craig Donais together represent a good example of the "good ole boy" network in the legal community of NH. And they both have exploited race issues to gain advantage in legal matters pertaining to the plaintiffs, including using "dog whistle" attacks in order to undermine the plaintiffs with the ADO, the PCC, and the NH Supreme Court.

162.    NB: Craig Donais is one of the most dishonest lawyers that the plaintiffs have ever met. He is someone who the NH Supreme Court should want to protect the public against. But NH Supreme Court has failed and continues to fail to consider the possibility that these

dishonesty issues with Craig Donais are going to blow up to be a major embarrassment for the NH Supreme Court and the legal system once his race-based felony perjury and hate crimes against the plaintiffs (and other misconduct) is fully revealed, exposed, and proven, in one forum or another at some point, and the NH Supreme Court will then have "egg on its face" for "turning a blind eye" to the whistleblower's alarm that the plaintiffs have been sounding about Craig Donais and about his utter, blatant, willful, and unrepentant dishonesty, similar to what happened with Judge Fairbanks and Judge Paul Moore. And when it does, this will likely become the next big scandal in New Hampshire. The New Hampshire Supreme Court or its committees has had at least 4 attorney discipline cases before it where Craig Donais was a respondent. At least two cases were by persons other than the plaintiffs. In at least one of those cases (the one that the plaintiffs are seeking records for), on information and belief, there was a deal or agreement of some kind that was made to dismiss the case. It appears that this is one of the reasons why both Craig Donais and the PCC or ADO do not want to provide copies of these records to the plaintiffs or make copies available to the public.. The existence of such proceedings would be appropriate subject matter for discovery in this court. There is no reason to believe that the New Hampshire Supreme Court could adjudicate such matters and maintain an appearance of integrity and impartiality.

163. This country was founded on dissent and by those who felt obligated to challenge systems i.e., to throw off the shackles of monarchial rule and tyranny. It was also founded on a distrust of those in power thus requiring checks and balances on the power held by men in official roles including those in the courts. It is why we have juries and a legislative branch and an executive branch as a check on the power of those who wield power in the courts. Yet the courts have evolved over time to largely insulate itself from certain "checks and balances" especially at the state supreme court level (and especially in light of the fact that writs of certiorari are rarely granted by the US supreme court for most state court cases/issues). The only other possible check on a state supreme court is through the injunctive powers of the federal court, which also creates a stronger path to US supreme court review. One of the reasons for the existence of federal courts is to provide protection from the tyranny of state courts especially where they disfavor outsiders over against their own citizens who might enjoy a home court advantage. Additionally, federal courts provide protection in cases where state courts refuse to recognize the civil rights of a certain protected class of people whether based on race, or other protected classes, etc.

164. In the plaintiffs' case, the plaintiffs are at a disadvantage based on one or more of such reasons and it is why at this juncture the plaintiffs have no other choice but to seek relief from the federal court.

165. Respectfully, the plaintiffs believe they will obtain a more impartial objective adjudication of the issues by a federal court than from NH Supreme Court or its committees or by NH state agencies. The defendants may disagree with this assessment (which is to be expected), but it is the plaintiffs' fundamental right as Americans to be concerned about this or feel this

way and to seek relief from federal court in order to assure fairness and impartiality in these matters.

166.    Ultimately, the refusal of this court to provide a stay on this case (and previously to even accept for Ms. Anderson's appeal for review, case LD-2020-0002, and to deny her recent petition, case LD-2020-0008), buttresses our concern that this court is not able to render an impartial decision on these issues, and that it views any issue that the plaintiffs bring to it with a jaundiced eye and rank dismissiveness that deprives the plaintiffs of due process and a fundamental right to be fully and fairly heard and to be free from a biased factfinder and adjudicator. Respectfully, the plaintiffs do not believe this court will believe anything the plaintiffs say or credit any testimony or any evidence the plaintiffs provide or any arguments the plaintiffs advance no matter how correct or how right or how irrefutable. The plaintiffs believe this court will by brute force power (i.e., "might makes right") find against the plaintiffs and side with their opponents because of who the plaintiffs are and because of who the opposing parties are.

167.    Similarly, given that the ADO, and the PCC are committees under the judicial branch of the NH supreme court, and given the incestuous relationships that exist between and within these committees as well as with the court, the plaintiffs do not believe that this court will ever find any bias from the ADO, or the CSC or the PCC no matter how arbitrary or capricious their actions or statements are, no matter how the plaintiffs are treated or mistreated by them, and no matter how the plaintiffs are deprived of fundamental fairness. This is how entrenched systems work. Entrenched systems create cascading effects that reverberate throughout the  system that reinforce the operators and the modus operandi of the system and its actors.

## XII. MORE ON CONFLICT OF JUSTICE PATRICK DONOVAN & VIOLATION OF DUE PROCESS BY NH SUPREME COURT

168.    Patrick Donovan has a history of treating the plaintiffs in a hostile manner.

169.    Plaintiff Bisasor requested an extension of time to file a brief, including based on major surgery but it was denied by Justice Donovan. No real reason was really given.

170.    The proceedings in the New Hampshire Supreme Court related to Plaintiff's appeal are a sham proceeding in that the 3 justices will dismiss this appeal unfairly on July 20, 2022, not on the merits, even though the plaintiffs requested an extension due to major surgery and other conflicts as well as the need to to correct material errors in the court transcriber produced transcript. Otherwise, it will no doubt dismiss the appeal or rule in favor of the defendants even after the case is briefed.

171.    Plaintiff is thus being denied a fair hearing on the merits of his petition before the New Hampshire Supreme Court because Justice Donovan has refused to allow a proper/correct transcript to be provided to the plaintiffs.

172.    NB: The plaintiffs hereby also request injunctive relief in terms of ordering that the NH Supreme Court not dismiss the appeal and provide an reasonable extension of time to accommodate the plaintiffs' surgery and to accommodate correction of the court transcript of the superior court proceedings.

173.    Similarly, this raises concerns about the racial bias implications of white people in power second guessing and undermining the medical issues and medical pain of black people (i.e. which studies have shown that a majority of white folks are more inclined to disbelieve black people when they are in pain or regarding their medical issues. Implicit bias research has shown this conclusively). In the instance, Justice Donovan had no good reason to doubt the plaintiff's assertion that he had upcoming surgery and attendant medical issues that would hamper the plaintiffs' ability to file a brief.

174.    NB: This was the first extension of time to file a brief in this appeal that was made by the plaintiffs. Moreover, the existence of medical issues for an older non-lawyer person (such as the plaintiffs) or a pro se non-lawyer plaintiff, is not unusual. When medical conditions arise for older folks, they can metastasize easily or quickly or can generate more medical conditions, requiring ongoing medical intervention. The citation of a medical procedure or a medical issue requiring a continuance or an extension of a deadline is a temporary impediment that may require a little more time to meet a deadline, not indefinitely, but for a certain period of time.  This is not unusual. It is a fact of life for many regular American folks. It is also a fact for many lawyers who also suffer from chronic or debilitating medical conditions or diseases. Yet when such lawyers request extensions, they are believed. In fact, when lawyers request extensions because of the illness of a family member or child, they are believed. But let a pro se or non-lawyer african american plaintiff say they have a medical need for an extension, then suddenly no benefit of the doubt is given, exacting proof is required and suspicion and skepticism immediately arise and extra disparate scrutiny is applied. This is just another way implicit bias plays out in the justice system.  Similarly, the fact that pro se litigants generally need more time is not unusual. Pro se parties do not have law offices, legal staff or assistants or teams of lawyers to assist. The time requirements of the legal system do not account for pro se non lawyers who cannot afford lawyers, who do not get paid for any litigation activities, who have full lives out of court activities and this is not their job, who have to work a full time job in the day, and after dealing with family, kids, and other life obligations, have to squeeze in time to do legal work including legal research which many do not know how to do, do not have access to legal resources to simply do such research and who take a longer time to understand the law, cases or precedents, etc. Justice Donovan gave no consideration or regard to the fact that an African american plaintiff and her African American spouse, who were tremendously impacted by Covid-19, who are economically disadvantaged and who are up against the vast unlimited resources of the state of NH and the vast number of attorneys from the NH AG office inclusive of the 4 or 5 AG lawyers that have been assigned to this case alone, plus the law firms of Craig Donais and Russell Hilliard to boot, may need an extension of time to file a brief. But no such consideration was given. No benefit of the doubt. No instruction to provide more information if that was necessary. Nothing but a summarily blanket denial based on bias against the african american plaintiffs with medical issues including the need for surgery, which is documented by doctors at MGH.

175.    Moreover, Justice Donovan knows Craig Donais from private practice and worked with him on the same cases, representing different parties.

176.    Justice Donovan worked for the entity (AG office of NH) defending the case and appeal (case# 2021-0604).

177.    Justice Donovan has shown bias in his decisions on rudimentary issues.

178.    Justice Donovan has discriminated against the plaintiff in a related matter in which he chairs the proceedings for the rules committee, as noted above.

179.    Justice Donovan has refused to address issues of discrimination and unfair conduct by him and the body he chairs.

180.    Justice Donovan ignores these issues and has not addressed them.

181.    Justice Donovan favors Donais and Hilliard.

182.    Russell Hilliard is working on these subcommittees over which Justice Donovan chairs. The relationships are incestuous and conflicting.

183.    Justice Donovan has refused to allow correction errors of the transcript in appeal (case# 2021-0604) and denied time needed to do so. This results in harm to the plaintiffs because these errors are material and will likely impact the outcome of the appeal (case# 2021-0604).

184.    Justice Donovan refused to allow consideration of the plaintiff's surgery in callous biased and draconian manner. Justice Donovan believes without question the lies and misleading comments by Russell Hilliard, who has an unfair advantage in the NHSC.

185.    Justice Donovan and the NHSC appears to be angry that the plaintiffs have sought to raise concerns about its partiality, especially about Justice Donovan, even though two other justices have needed to be recused, leaving only three justices on the bench.

186.    Justice Donovan is allowing a party to influence the outcome of the litigation by using channels outside of the litigation.

187.    The NHSC is likely going to dismiss the plaintiffs' appeal (case# 2021-0604).

188.    It is futile to ask the NH Supreme Court to address these issues. It will fall on deaf ears.

189.    The NH legal community is known to be very clubby and incestuous.

190.    NB: The bias and conflict as alleged and cited herein is sufficient to provide an exception to the abstention doctrine.

191.    This court must take these allegations as true and therefore it must construe the issue of bias in favor of the plaintiffs.

## XIII. CONCLUSION

192.    Plaintiffs have alleged facts that show that the New Hampshire Supreme Court has infringed or attempted to infringe upon Plaintiffs' rights under the first and fourteenth amendments of the United States Constitution and under federal law; and that the NH Supreme Court and its justices and committees are biased and conflicted.

193.    Plaintiffs will suffer irreparable injury if an injunction is not granted in this case.

194.    NB: NB: The plaintiffs ask the court to grant a liberal construction to these pro se/non-lawyer words in a light most favorable to the plaintiffs, in accordance with the best practices of modern jurisprudence and in compliance with the US supreme court's directive to all lower courts and tribunals, in Haines v Kerner, 404 U.S. 519 (1972). The plaintiffs

request that this court tries its best to understand what it is that the plaintiffs are hereby seeking from the court, and to interpret it in the best way and best light possible, in order to provide appropriate relief and justice as is necessary and required.

## XIV.PRAYER FOR RELIEF

195.     WHEREFORE, the plaintiffs respectfully move and pray this honorable court upon hearing of this matter, to do the following:

    a.   Issue a preliminary injunction as follows:

        i.    Order the justices of the NH Supreme Court to dismiss without prejudice Plaintiff's petition in that court;

        ii.   Order the justices of the NH Supreme Court to refrain from dismissing the appeal (Case#: 2021-0604) while this federal court action is pending;

        iii.  Order the NH Supreme Court to stay proceedings and deadlines associated with Case # 2021-0604 including the deadline for any briefs;

    b.   To transfer this case from state court to federal court.

    c.   To require the New Hampshire Supreme Court to allow correction of the transcript.

    d.   To issue an order requiring disqualification of Justice Patrick Donovan of the NH supreme court from hearing this matter.

    e.   To require the New Hampshire Supreme Court follow its own rules regarding the adoption of proposed rule changes including informing those most affected about the proposed rule change.

    f.   Order defendants to electronically produce all responsive documents to the plaintiffs immediately upon issuance of this order in compliance with the ADA and federal law;

    g.   Enjoin the defendants from refusing to comply with the NH constitution and public access requests for public files at the ADO and the NH supreme court.

    h.   Declare that the act by the PCC in barring provision of a copy of public records to the plaintiffs are unconstitutional, in violating the plaintiffs' right to petition government, as secured by the First and Fourteenth Amendments to the United States Constitution.

    i.   Declare that the PCC has violated plaintiff's right to free speech as secured by the First and Fourteenth Amendments to the United States Constitution, in preventing the plaintiff from criticizing the PCC's conduct and handling of the prior complaint against attorneys.

    j.   Declare that the PCC's act of barring provision of a copy of public records to the plaintiffs are an unconstitutional restraint and suppression of free speech, repugnant to robust discourse in a free society.

    k.   To grant a pro se liberal construction to this filing.

    l.   To grant such other relief as may be just and equitable.

Respectfully submitted by:

*andre bisasor*   /s/andre bisasor
Andre Bisasor
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
Tel. 781-492-5675
Email: quickquantum@aol.com

/s/Natalie Anderson
Plaintiff Natalie Anderson
679 Washington Street, Suite # 8-206
Attleboro, MA 02703
Tel. 617-710-7093
Email: liberty_6@msn.com

July 19, 2022